# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| RF TECHNOLOGIES CORPORATION, RF TECHNOLOGIES, LLC, and THE FERRITE COMPANY, INC., <br><br>  Plaintiffs <br><br> v. <br><br> APPLIED MICROWAVE TECHNOLOGIES, INC., TIMOTHY SCHEURS, MONTYLEE D. WATT, TERRY LECLERE, TOM ALLISON, and WILLIAM NURRE, <br><br> Defendants | Civil No. 05-32-P-C |

Gene Carter, Senior District Judge

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF IOWA**

Plaintiffs RF Technologies Corporation (hereinafter "RFT Corp."),[1] RF Technologies, LLC (hereinafter "RFT, LLC"), and the Ferrite Company, Inc. (hereinafter "Ferrite") brought a five count Amended Complaint against Applied Microwave Technologies, Inc. (hereinafter "AMTek") and five individual AMTek employees.

---

[1] Plaintiffs indicate that RF Technologies Corporation is now known as GHPR Holdings, Inc. Because the parties continue to use the old name in their pleadings, and because no appropriate documentation of the name change is currently before the Court, the Court will also use the name RF Technologies Corporation in this Order.

Plaintiffs' Amended Complaint alleges conversion (Count I), breach of contract (Count II), misappropriation of trade secrets in violation of 10 M.R.S.A. § 1541 *et seq*. (Count III), and unfair competition (Count IV). In Count V, Plaintiffs seek a declaratory judgment that RFT Corp. and RFT, LLC are not required to perform under the terms of a purchase order placed by AMTek.

Now before the Court is Defendants' Motion to Dismiss or, in the alternative, Motion to Transfer (Docket Item No. 31). Defendants allege that neither AMTek nor the named individual employees are subject to personal jurisdiction in Maine.[2] In the alternative, Defendants suggest that this lawsuit should be transferred to the United States District Court for the Northern District of Iowa. In the event that the Court denies the Motion to Dismiss for lack of personal jurisdiction, Defendants contend that the declaratory judgment claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, the Court will deny Defendants' Motion to Dismiss for lack of personal jurisdiction as to Defendants AMTek and Scheurs, grant Defendants' Motion to Dismiss as to Defendants Allison, LeClere, and Watt, deny Defendants' Motion to Dismiss for failure to state a claim, and deny Defendants' Motion to Transfer.

---

[2] Defendant Nurre was not named as a defendant in Plaintiffs' initial Complaint. Defendants make an undeveloped argument that Mr. Nurre was not properly added as a defendant. *See* Defendants' Reply in Support of Their Motion to Dismiss (Docket Item No. 47), at 2. Fed. R. Civ. P. 15(a) states that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served …." A motion to dismiss does not constitute a "responsive pleading" for purposes of Rule 15(a). *See United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.2d 220, 242 n.29 (1st Cir. 2004). Accordingly, Plaintiffs properly exercised their right to amend their Complaint once without leave of court. Because Mr. Nurre had not been served at the time Defendants filed their Motion to Dismiss, he is not a party to the instant motion. Whether Mr. Nurre is subject to the jurisdiction of this Court may be the subject of a subsequent motion.

I.      **Factual Background**

Ferrite is a Delaware corporation with its principal place of business in Nashua, New Hampshire. Amended Complaint ¶ 3. Ferrite is in the business of designing, manufacturing, selling, and distributing high power microwave components and industrial systems, including industrial microwave ovens used for industrial cooking of foods. *Id.* ¶ 11. RFT Corp. is a Maine corporation with its principal place of business in Lewiston, Maine. RFT Corp. is a manufacturer of machined products used in industrial microwave ovens. *Id.* ¶ 18. RFT, LLC is a Delaware corporation with its principal place of business in Lewiston, Maine. RFT, LLC is wholly owned by Ferrite.

On January 17, 2003, Ferrite purchased the assets of the Amana Industrial Microwave Division (hereinafter "Amana") -- owned at the time by the Maytag Corporation -- for $2,800,000 plus royalties on sales. *Id.* ¶ 12. Among the assets purchased by Ferrite from Maytag were the Amana product designs and specifications, including associated engineering drawings and documents. *Id.* Amana is located in Newton, Iowa. *Id.*

Defendants Scheurs, Watt, LeClere, Allison, and Nurre (hereinafter "the Former Amana Employees") were employees of Amana at the time Ferrite purchased Amana's assets. *Id.* ¶ 13. During the course of their employment with Amana, each defendant was required to sign a confidentiality agreement with Maytag, which required of him the following:

    (a)    to hold in confidence and not to use or disclose either during or after the termination of his employment any confidential Maytag information;

    (b)    not to make copies of any confidential Maytag information; and

> (c) to return to Maytag prior to termination of his employment all tangible things in his possession and control that contain or embody any confidential Maytag information, including but not limited to drawings, documents, magnetic media, and models and copies and reproductions thereof.

*Id.* ¶ 5. The Former Amana Employees each left Amana shortly after the time that Ferrite acquired Amana's assets. *Id.* ¶ 14. Plaintiffs allege that at the time each Defendant left Maytag's employ, Maytag provided explicit notice of the continuing obligation under the confidentiality agreement. *Id.*

As part of the sale to Ferrite, Maytag assigned the confidentiality agreements signed by the Former Amana Employees to Ferrite. *Id.* ¶ 15. Plaintiffs allege that at the time the Former Amana Employees left Maytag's employ, they copied and took with them confidential and proprietary drawings of the Amana industrial microwave ovens that Ferrite had purchased from Maytag. *Id.* ¶ 16. Plaintiffs allege that the Former Amana Employees did so with knowledge that Maytag had sold the confidential and proprietary drawings to Ferrite. *Id.* Plaintiffs further allege that the Former Amana Employees took the confidential and proprietary drawings for the purpose of building their own competitive microwave ovens. *Id.*

Defendants Scheurs, Watt, LeClere, and Allison organized AMTek under the laws of the State of Iowa on February 28, 2003, approximately six weeks after Ferrite purchased Amana's assets. *Id.* ¶ 17. Plaintiffs allege that AMTek is the vehicle by which the Former Amana Employees have manufactured and sold industrial microwave ovens that they based on the confidential Amana drawings. *Id.* Plaintiffs contend that the

4

Former Amana Employees and AMTek have contracted with RFT Corp. to manufacture certain components used in these microwave ovens. *Id.* ¶ 18.[3]

On December 16, 2004, RFT, LLC, the wholly owned subsidiary of Ferrite, acquired certain assets of RFT Corp. *Id.* ¶ 19. In the course of negotiations between RFT Corp. and RFT, LLC, RFT Corp. disclosed to Ferrite that RFT Corp. was manufacturing certain products for AMTek based upon AMTek drawings. *Id.* In January 2005, Ferrite saw the AMTek drawings submitted to RFT Corp. *Id.* These drawings were prepared by Defendant Nurre, who had also signed a confidentiality agreement with Maytag.[4] *Id.* Plaintiffs contend that the AMTek drawings are thinly disguised copies of the confidential and proprietary Amana drawings of microwave components[5] that Maytag had loaned to RFT Corp. for component production. *Id.* ¶ 20. Each Amana drawing had been labeled "CONFIDENTIAL PROPERTY OF AMANA. NOT TO BE DISCLOSED TO OTHERS, COPIED, OR USED FOR ANY PURPOSE EXCEPT AS AUTHORIZED IN WRITING. MUST BE RETURNED ON DEMAND, COMPLETION OF ORDER OR OTHER PURPOSE FOR WHICH IT WAS LENT." *Id.* The AMTek drawings that Plaintiffs contend are copies of the proprietary Amana drawings were labeled "CONFIDENTIAL PROPERTY AMTEK" when they were submitted to RFT Corp. for production. *Id.* Believing that their proprietary and confidential drawings had been

---

[3] Maytag, during the period of ownership of the Amana Division, also contracted with RFT Corp. to produce certain microwave components. To enable RFT Corp. to manufacture these components, Maytag would loan RFT Corp. the confidential Amana drawings. When Ferrite bought the Amana division, Maytag instructed RFT Corp. to turn over the confidential drawings to Ferrite, and RFT Corp. did so. Complaint ¶ 18.

[4] At the time Ferrite purchased Amana, this confidentiality agreement was also assigned to Ferrite by Maytag. Complaint ¶ 19.

[5] The components include rotary feeds, launching systems, water load cylinders, and water load boxes. Complaint ¶ 20.

5

copied and were being used by a competitor, Ferrite apparently directed its newly acquired subsidiary, RFT Corp., to cease producing components for AMTek. In an undated letter,[6] AMTek sought assurances from RFT Corp. that its three outstanding purchase orders would be completed and shipped on or before February 25, 2005. *See* Letter from Timothy Scheurs, Sales and Operations, Applied Microwave Technologies, Inc., to George Harris, President, RF Technologies Corporation (attached as Exhibit B to Affidavit of Peter Robicheau (Docket Item No. 43)). The letter stated that

> [i]n the event shipment is not received by AMTek with respect to these three purchase orders, by February 25, 2005, AMTek will hold RF Technologies responsible for all damages sustained by AMTek, including costs of cover, consequential and incidental damages, and AMTek may pursue any and all other remedies available to it, including remedies for restraint of trade and unfair trade practices.

*Id.*[7]

Two days after RFT Corp. received this letter, Plaintiffs filed the instant lawsuit.

## II. Personal Jurisdiction

Because this is a diversity case, this Court's authority to exercise personal jurisdiction over a nonresident defendant is limited by the State of Maine's long-arm statute. *See Am. Express Int'l, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1178 (1st Cir. 1989). Maine's long-arm statute permits jurisdiction over nonresident defendants to the "fullest extent permitted by the due process clause of the United States Constitution." 14 M.R.S.A. § 704-A(1). Consequently, the inquiry focuses on whether assertion of jurisdiction in this case violates due process.

---

[6] Although the letter itself is not dated, the record suggests that it was sent to RFT Corp. as an attachment to an email on February 22, 2005.

[7] It is this letter upon which Plaintiffs base their declaratory judgment claim.

Due process requires that the defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 797, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Such minimum contacts are determined by whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

To establish personal jurisdiction over a nonresident defendant, the plaintiff must demonstrate that the defendant is subject either to "general jurisdiction" or "specific jurisdiction." "[A] defendant who has maintained a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999). Without general jurisdiction, this Court may still hear the instant case if the claim "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." *Id.*; *see also Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 462-63 (1st Cir. 1990). This is so-called "specific jurisdiction." In this case, Plaintiffs do

7

not contend that all named Defendants are subject to general jurisdiction; thus the Court's inquiry is limited to specific jurisdiction.[8]

The First Circuit Court of Appeals has indicated that a district court should conduct a three-part inquiry when considering specific jurisdiction. *See, e.g.*, *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998). The tripartite analysis is as follows:

> First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction.

*Phillips Exeter*, 196 F.3d at 288.

The Court "may choose from among several methods for determining whether the plaintiff has met [its] burden" of proving this Court's personal jurisdiction over the defendant. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50-51 (1st Cir. 2002). The most common method is the *prima facie* method, which "permits the district court 'to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995) (quoting *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992)). This is not a case in which requires the court to embark on a factfinding mission. *See, e.g.*, *Boit*,

---

[8] Although Plaintiffs do not explicitly invoke specific jurisdiction, the framework of their argument suggests that they are proceeding on this basis. In any event, the Court is satisfied that none of the Defendants have the requisite "continuous and systematic general business contacts" to support a finding of general jurisdiction. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

967 F.2d at 676. The Court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the *prima facie* jurisdictional showing." *Id.*

    **A. Defendant AMTek**

In challenging personal jurisdiction, AMTek focuses on the second prong of the tripartite jurisdictional test applicable in this circuit. AMTek alleges that it is not subject to personal jurisdiction in Maine because it lacks the requisite contacts with Maine. Specifically, AMTek indicates that it is an Iowa corporation, has no offices in Maine, has no employees in Maine, owns no property in Maine, does not have a bank account in Maine, has never sent an employee to Maine on behalf of the corporation, does not advertise in Maine, and has not sold any products to Maine customers. *See* Defendants' Motion to Dismiss, at 5. Defendant AMTek ignores, however, the fact that it entered into business dealings with a Maine corporation for production of microwave components. Plaintiffs have submitted a Declaration of Peter Robicheau (Docket Item No. 43), Vice President of Manufacturing of RFT Corp., in which he states that RFT Corp. sold manufactured microwave component parts to AMTek from June 17, 2003, through February 7, 2005, totaling $104,830.14. Through this ongoing business conduct, AMTek purposefully availed itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958), and should have "reasonably anticipated being haled into court" in Maine should disputes and controversies develop as to the rights, obligations, and duties of the parties on the premises of the Maine-based undertakings. *See, e.g., World-Wide Volkswagen*, 444 U.S. at 297. Because AMTek

9

engaged in extensive business dealings with a Maine corporation, the substance of which are at issue in this case, the second prong of the test is satisfied.

AMTek does not challenge, for purposes of personal jurisdiction, the notion that "the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum." *Phillips Exeter*, 196 F.3d at 288. Although the primary dispute between the parties is the alleged copying or stealing of proprietary and confidential documents <u>in Iowa</u>, the Court is satisfied that AMTek's business dealings with a Maine corporation for the production of microwave components allegedly created from the allegedly stolen proprietary documents is sufficiently related to the underlying controversy to satisfy this prong of the jurisdictional test.

AMTek's final challenge to this Court's exercise of jurisdiction is that subjecting AMTek to litigation in Maine would violate fundamental principles of fair play and reasonableness. *See* Defendants' Motion to Dismiss, at 6. To evaluate reasonableness, the Supreme Court has provided a set of "gestalt factors" to consider. *See N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 26 (1st Cir. 2005) (citing *World-Wide Volkswagen*, 444 U.S. at 292). These gestalt factors include:

> the defendant's burden of appearing; the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (citing *Burger King*, 471 U.S. at 477). Factors weighing in favor of an exercise of jurisdiction include Plaintiffs' interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining efficient resolution of the controversy;[9]

---

[9] So far as the Court is aware, there are no parallel proceedings involving these parties pending in any other court at this time.

and Maine's interest in providing a forum for resolution of disputes involving its citizens.[10] The only factor weighing against jurisdiction[11] is the extent of the burdens placed on AMTek of appearing in Maine. In considering this argument, the Court notes that the First Circuit Court of Appeals has stated that "insofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, we think this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994). AMTek has not suggested any "special or unusual burden" that weighs against jurisdiction in this court. Accordingly, the gestalt factors do not indicate that jurisdiction in Maine would violate fundamental fairness. Plaintiffs having established all three elements of the tripartite jurisdictional test, the Court concludes that it may properly exercise jurisdiction over Defendant AMTek under the due process clause of the United States Constitution with respect to the claims and defenses asserted in this case.

### B. Defendants Allison, LeClere, and Watt

Individually named Defendants Allison, LeClere, and Watt move for dismissal of the individual claims asserted against them on the grounds that they do not have the necessary contacts to support an exercise of jurisdiction over them by this Court. In support of this contention, each Defendant has submitted an affidavit with the Court indicating that he is a resident of the State of Iowa and outlining the absence of any

---

[10] Although AMTek points out that the primary dispute in this case is between Ferrite and AMTek, neither of whom are registered in Maine or have a principal place of business in Maine, the Court is satisfied that because AMTek's business dealings with RFT Corp., a Maine corporation with its principal place of business in Maine, are inexorably intertwined with the underlying allegation of stealing <u>and using</u> confidential and proprietary business information, Maine has a significant interest in this case.

[11] The Court is of the opinion that the "shared interest of the several States in furthering fundamental substantive social policies" does not weigh in favor of, or against, an exercise of jurisdiction in this Court.

11

personal or business contacts with Maine.  *See* Affidavit of Tom Allison, Attached as Exhibit 1 to Defendants' Motion to Dismiss; Affidavit of Terry LeClere, Attached as Exhibit 2 to Defendants' Motion to Dismiss; Affidavit of Montylee Watt, Attached as Exhibit 4 to Defendants' Motion to Dismiss.  The burden is on Plaintiffs to "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit*, 967 F.2d at 675.  With respect to these three Defendants, Plaintiffs have produced no evidence to support an exercise of personal jurisdiction.  The fact that this Court has personal jurisdiction over AMTek is by itself not enough to extend jurisdiction to all AMTek employees.  *See, e.g.*, *LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*, 193 F. Supp. 2d 296, 300 (D. Mass. 2002).  That said, the so-called "fiduciary shield doctrine" has never been interpreted by a Maine Court to limit the scope of personal jurisdiction.  *See Me. Rubber Int'l v. Envtl. Mgmt. Group*, 298 F. Supp. 2d 133, 136 (D. Me. 2004).  As Judge Hornby stated in *Maine Rubber*,

> In this diversity case, I am governed by Maine law of personal jurisdiction, as limited by the United States Constitution.  Maine has stated in its statutes:
>
>> [T]o insure maximum protection to citizens of this State, [this section] shall be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution, 14th amendment.
>
> 14 M.R.S.A. § 704-A(1) (2003).  Likewise, many Law Court opinions confirm that personal jurisdiction extends to the utmost limit that the United States Constitution permits. *E.g.*, *Jackson v. Weaver*, 678 A.2d 1036 (Me. 1996); *Christiansen v. Smith*, 598 A.2d 176 (Me. 1991).  Therefore, whatever equitable attractions the fiduciary shield doctrine may have, since it is not constitutionally required I cannot apply it to limit the scope of Maine personal jurisdiction.  I recognize that some other state courts with expansive jurisdictional language like Maine's have proceeded to apply the fiduciary shield doctrine. *E.g.*, *Rollins v. Ellwood*, 141 Ill. 2d 244, 565 N.E.2d 1302, 1318, 152 Ill. Dec. 384 (Ill. 1990).  But Maine has never made any suggestion that it would limit the scope of its personal

>jurisdiction on anything but federal constitutional grounds, and there is no basis for me as a federal judge to predict that the Maine Law Court would do otherwise.

*Id.* at 135-36.

In order to require an employee of a foreign corporation -- named individually as a codefendant along with his or her employer -- to defend a lawsuit in Maine, the exercise of jurisdiction over the person must be reasonable. *See Donatelli v. UnumProvident Corp.*, 324 F. Supp. 2d 153, 163 (D. Me. 2004). Because Maine courts have never stated that the fiduciary shield doctrine limits the scope of personal jurisdiction, *see Me. Rubber Int'l*, 298 F. Supp. 2d at 136, an individual employee's corporate contacts -- even in the absence of personal contacts -- with Maine are sufficient to satisfy the Maine long-arm statute and the federal Constitution. *Accord Interface Group-Mass., LLC v. Rosen*, 256 F. Supp. 2d 103, 105 (D. Mass. 2003). Plaintiffs make no showing of any role of these defendants in AMTek's business relationship with RFT Corp. in Maine. Plaintiffs having offered no evidence with respect to these three Defendants of personal or corporate contacts with Maine, Defendants Allison, LeClere, and Watt will be dismissed from this case for lack of personal jurisdiction.

### C. Defendant Scheurs

Defendant Timothy Scheurs also moves to dismiss for lack of personal jurisdiction. In support of his motion, Scheurs submitted an affidavit to the Court in which he exhaustively details his absence of personal contacts with Maine. *See* Affidavit of Timothy Scheurs, Attached as Exhibit 3 to Defendants' Motion to Dismiss. In response, Plaintiffs provided the Court with print-outs of emails between Scheurs and RFT Corp. employees based in Maine. *See* Exhibit B to Affidavit of Peter Robicheau

13

(Docket Item No. 43). These emails clearly depict an ongoing dialogue between Scheurs and individuals in Maine. Furthermore, the Court notes that Scheurs sent the letter that is the subject of Plaintiffs' declaratory judgment claim to RFT Corp. in Maine. Therefore, because Defendant Scheurs personally contacted the forum state in his corporate capacity he is not protected by any "fiduciary shield." Personal jurisdiction over Scheurs is constitutional under the tripartite personal jurisdiction test for the same reasons stated *supra* with respect to Defendant AMTek.

### III. The Declaratory Judgment Claim

Defendant's Motion to Dismiss the declaratory judgment claim[12] invokes Fed. R. Civ. P. 12(b)(6). A defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001). The Court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the … [plaintiffs'] favor, and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." *TAG/ICIB Servs. v. Pan Am. Grain Co.*, 215 F.3d 172, 175 (1st Cir. 2000).

In order for the Court to entertain a declaratory judgment claim, there must exist an actual controversy. *Los Angeles v. Lyons*, 461 U.S. 95, 104, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). Defendant AMTek contends that any controversy between Plaintiffs RFT Corp. and RTF, LLC and Defendant AMTek regarding RFT Corp.'s refusal to complete three purchase orders is no longer live. Although the Scheurs letter threatens litigation in the event RFT Corp. does not complete AMTek's purchase orders, AMTek asserts that it has subsequently given up any rights it had under the production contracts. Specifically,

---

[12] The Declaratory Judgment count is asserted only against Defendant AMTek.

Defendants rely on Timothy Scheurs' Affidavit, which states that "AMTek waives any claim to the parts and the orders." Affidavit of Timothy Scheurs (Docket Item No. 36) ¶ 62. Defendants' Motion to Dismiss also contains a statement that "AMTek hereby <u>withdraws</u> any and all outstanding purchase orders to RFT." Defendants' Motion to Dismiss, at 13 (emphasis in original). The Court is not satisfied, however, that either of these statements effectively repudiates the full dimension of the threatened litigation contained in Defendant Scheurs' letter; nor does it warrant a conclusion that the dispute surrounding the purchase orders is no longer live and does not negative the possibility that it may be pursued in some other action or jurisdiction. Neither document suffices as a covenant not to sue or other stipulation that is legally binding on Defendants with respect to all of the potential claims. Without such an enforceable waiver of rights, the Court finds that the dispute remains live. Accordingly, under the present circumstances of this case, the declaratory judgment count states a claim for relief.

### IV.     Defendants' Request, in the Alternative, to Transfer Venue to Iowa

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Defendants' challenge to venue in Maine is predicated on two points: (1) that the central dispute in the case is between Ferrite and AMTek, neither of which is located in Maine; and (2) that proceeding in Maine is unduly burdensome and inconvenient to the Defendants.

At the outset, the Court notes that Plaintiffs' choice of forum is entitled to great weight. *Forum Fin. Group v. President & Fellows of Harvard College*, 173 F. Supp. 2d 72, 92 (D. Me. 2001). With respect to the first argument, the Court is cognizant of the

15

fact that the only claim asserted on behalf of the Maine-based Plaintiffs is the declaratory judgment claim. However, under the present posture of the case and in light of the pendency of the claim herein of Maine-based corporations for a declaratory judgment concerning their contractual commitments with AMTek in respect to the use of the proprietary documents, Defendants' first argument fails.

Defendants' inconvenience argument also fails to warrant a transfer of venue. "It is not enough without more that the defendant would prefer another forum, nor is it enough merely to show that the claim arose elsewhere. Nor will transfer be ordered if the result is merely to shift the inconvenience from one party to the other." 15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3848, at 383-86 (2d ed. 1986). While it would undoubtedly be more convenient for Defendants and their witnesses to pursue this case in Iowa, that fact alone does not warrant transfer. *See, e.g.*, *Demont & Assocs. v. Berry*, 77 F. Supp. 2d 171, 174 (D. Me. 1999). Defendants have not presented the Court with any facts significant enough to outweigh the Plaintiffs' choice of forum.

### V.  Conclusion

For the reasons set forth above, the Court **ORDERS** as follows:

(1) Defendants' Motion to Dismiss for lack of personal jurisdiction be, and it is hereby, **GRANTED** as to Defendants Tom Allison, Terry LeClere, and Montylee Watt, and the Complaint is hereby **DISMISSED** as to those Defendants without prejudice, and is **DENIED** as to Defendants Applied Microwave Technologies, Inc. and Timothy Scheurs;

(2) Defendants' Motion to Dismiss Count V for failure to state a claim upon which relief can be granted be, and it is hereby, **DENIED**.

(3) Defendants' Motion to Transfer Case to the United States District Court for the Northern District of Iowa be, and it is hereby, **DENIED**.

/s/Gene Carter

**GENE CARTER**
United States Senior District Judge

Dated at Portland, Maine this 6th day of May, 2005.